*Comptroller of the Treasury v. Richard Reeves Taylor*, No. 56, September Term 2018, Opinion by Hotten, J.

**QUALIFIED TERMINABLE INTEREST PROPERTY – ESTATE TAXES –** The Court of Appeals held that the decedent's surviving spouse, Margaret Beale Taylor ("Ms. Taylor"), was entitled to a valuable property interest in the qualified terminable interest property ("QTIP") that was deemed to transfer upon her death through operation of the federal statutory scheme. The Court considered the relationship between Ms. Taylor's federal gross estate and her Maryland estate, concluding that the value of both were the same through operation of §§ 7-301 and 7-309(b) of the Tax-General Article in the Maryland Code. The Court concluded that absent any *additional* property subject to Maryland estate tax, Ms. Taylor's interest in the marital trust was subject to the same tax by operation of the federal and Maryland estate tax schemes.

**ESTATE TAXES – LATE PENALTY WAIVER –** The Court of Appeals held that, pursuant to Tax-Gen. § 13-714, the personal representative provided sufficient affirmative evidence to permit waiver of the Comptroller's 10% late penalty. The Court held that the Tax Court adequately considered the personal representative's arguments and concluded that those arguments met the threshold of "reasonable cause" to waive the late penalty.

**AGENCY DECISIONS – PRESERVATION OF ISSUES –** The Court of Appeals held that its review is limited to agency findings and the reasons for those findings. Because the Tax Court did not base its final decision on any constitutional grounds, Respondent's issues on cross-appeal were not preserved. As such, the Court declined to review the merits of the personal representative's argument.

Circuit Court for Washington County
Case No. 21-C-15-055059
Argued: April 8, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 56

September Term, 2018

_____

COMPTROLLER OF THE TREASURY

v.

RICHARD REEVES TAYLOR

_____

Barbera, C.J.,
* Greene,
McDonald,
Watts,
Hotten,
Getty,
Raker, Irma S.
(Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Hotten, J.
Watts, J., concurs.
Getty, J., dissents.

_____

Filed: July 29, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case arises from the Comptroller of the Treasury's ("Comptroller") assessment of estate tax and penalties against a Maryland estate that included the value of a particular type of marital trust. The marital trust, which was created in Michigan, consisted of qualified terminable interest property or "QTIP" that was reported on the decedent's federal estate tax return, but was omitted from the Estate's corresponding Maryland estate tax return.

In a reported opinion, *Comptroller of the Treasury v. Taylor*, 238 Md. App. 139, 152, 189 A.3d 799, 807 (2018), the Court of Special Appeals held that "the Comptroller lack[ed] the authority to tax the [trust assets] as part of [the] Maryland estate." The Court also held that "[g]iven no tax was authorized under the statute, no penalty could be properly charged against the Estate." *Id.*

On appeal, the Comptroller presents the following questions for our review:

1. Is the value of a surviving spouse's interest in a QTIP trust created in another state properly included in the surviving spouse's Maryland estate, and therefore subject to the Maryland estate tax?

2. Did the Tax Court improperly waive a late-filing penalty when waiver must be supported by affirmative evidence and the only basis cited for the waiver was the personal representative's erroneous interpretation of the tax laws?

The personal representative filed a cross-petition with the following issues:

1. Is [the Comptroller's] taxation of the QTIP trust in the [E]state unconstitutional?

2. Is the fact that an issue was raised before the Tax Court, but not expressly decided by that agency, sufficient to permit review of that issue on appeal from the agency ruling?

For reasons discussed *infra*, we reverse the judgment of the Court of Special Appeals on the first issue. We conclude that, upon the death of decedent's surviving spouse, Margaret Beale Taylor ("Ms. Taylor"), the QTIP trust assets were deemed to be transferred upon her death and that transfer was taxable by Maryland. As to issue two, we answer in the negative, concluding that the Tax Court properly waived the late-filing penalty.

With respect to the cross-petition, we consider the second issue first, concluding that this Court's review is limited to the Tax Court's findings and to the reasons for those findings. Because the Tax Court did not expressly address a constitutionality argument in its written opinion, we decline to review the personal representative's first issue in the cross-petition.

## BACKGROUND

**Factual Background**

The instant tax dispute arose from events that were triggered by the death of Ms. Taylor's husband, John Wilson Taylor ("Mr. Taylor"). Mr. Taylor predeceased Ms. Taylor on December 1, 1989. At the time of Mr. Taylor's death, Mr. and Ms. Taylor were residents of Wayne County, Michigan.

Mr. Taylor died with a valid Will dated September 1, 1982. The Will directed the creation of a "residuary marital trust," consisting of a portfolio of eleven different parcels of stocks and bonds valued on Mr. Taylor's date of death at $2,299,893.20. Mr. Taylor's Will directed that the net income from the residuary marital trust be paid to Ms. Taylor at

least annually for and during her lifetime and that upon Ms. Taylor's death, the trust assets would be dispersed to the trust beneficiaries, Mr. Taylor's son and grandchildren.

Upon the death of Mr. Taylor, the personal representative for his estate filed a timely federal tax return with the Internal Revenue Service in which the estate claimed a deduction for the marital trust, known as a qualified terminable interest property ("QTIP") election. Election of the QTIP deduction enables a married couple to defer payment of any estate tax on the transfer of the QTIP until the death of the surviving spouse. The marital deduction is allowed for the entire value of the QTIP. *See* 26 U.S.C. §§ 2044(a), (c); 2056(b)(7)(B).

Following Mr. Taylor's death, Ms. Taylor continued to reside in Michigan until 1993, when she moved to Washington County, Maryland. She died testate on January 15, 2013.

The personal representative filed a federal Estate (and Generation-Skipping Transfer) Tax Return with the Internal Revenue Service, which included the value of the property in the marital trust. On the federal estate tax return, the personal representative reported an Estate value of $5,582,245. The personal representative also filed a Maryland estate tax return, in which he excluded the value of the marital trust, decreasing the reported value of Ms. Taylor's federal gross estate by $4,108,048.02.

The personal representative explained his deduction of Ms. Taylor's interest in the marital trust in a statement attached to the Maryland return. It stated:

3

In reliance on Section 7-309(b)(6)(i)[1] of the Maryland Tax-General Code Annotated, the marital trust created under the Last Will and Testament of decedent's deceased spouse, John Wilson Taylor, in which decedent had an income interest for life and which is reported on Schedule F of decedent's Federal Estate Tax Return, Form 706, has been excluded from the federal gross estate (line 1, federal Form 706) reported on line 1 of Section IV of the MET-1. John Wilson Taylor died on December 1, 1989, and was a resident of the State of Michigan on the date of his death. No Maryland estate tax return was filed for Mr. Taylor, and thus no "marital deduction qualified terminable interest property election was made for the decedent's predeceased spouse on a timely filed Maryland estate tax return."

After examining the Maryland estate tax return, the Comptroller disallowed the claimed exclusion of Ms. Taylor's interest in the marital trust, adding back the value to the federal gross estate and the corresponding Maryland estate. The Comptroller then sent the personal representative a Deficiency Notice, which added interest, a 10% late penalty, and imposed a 25% penalty "due on underpayment attributable to substantial estate tax valuation."

In a letter to the Comptroller dated January 20, 2014, the personal representative protested the Deficiency Notice and objected to the Comptroller's demands. The personal representative asserted that Maryland had no taxable interest in the trust assets, citing to

---

[1] Maryland Code, Tax-General § 7-309(b)(6)(i) states:

For purposes of calculating Maryland estate tax, a decedent shall be deemed to have had a qualifying income interest for life under § 2044(a) of the Internal Revenue Code with regard to any property for which a marital deduction qualified terminable interest property election was made for the decedent's predeceased spouse on a timely filed Maryland estate tax return under paragraph (5) of this subsection.

4

Maryland Code, Tax-General ("Tax-Gen.") §§ 7-309(b)(6)(i), 7-302, and 26 U.S.C § 2044, discussed *infra*.

On May 28, 2014, the Comptroller sent a revised Deficiency Notice, waiving the 25% penalty, but retaining the 10% late penalty. On June 24, 2014, the personal representative filed a Petition of Appeal.

**Procedural Background**

    1. <u>Maryland Tax Court Proceeding</u>

The Tax Court held a hearing on May 6, 2015, followed by a written opinion, *Taylor v. Comptroller of the Treasury*, Maryland Tax Court, Case No. 14-EL-OO-0691, Memorandum and Order of the Court dated Sept. 2, 2015 ("*Tax Court Proceeding*"), which affirmed the estate tax assessed on the trust assets, as well as the assessed interest. In an amendment to the memorandum and order, the Court waived and abated the 10% late penalty fee, citing Tax-Gen. §13-714 and *Frey v. Comptroller*, 422 Md. 111, 29 A.3d 475 (2011), as relevant authority.[2]

The Tax Court found that, at the time of Ms. Taylor's death, she possessed a federal gross estate, consisting entirely of personal property, valued at $5,582,245. In considering this State's authority to tax the trust's assets, the Tax Court concluded that:

> [T]he Maryland estate tax is directly linked to the federal estate tax, and completely integrated with it. The linkage and integration is accomplished

---

[2] Previous to the amendment, the Tax Court had not adjudicated the issue of the late penalty. When the personal representative filed a Petition for Review at the circuit court level, the Comptroller responded, in part, with a Motion to Dismiss based on the lack of a final appealable order. The personal representative filed a Motion for Clarification of the Memorandum and Order, and in response, the Tax Court affirmed the additional estate tax and assessed interest, but waived the 10% late penalty fee.

by adopting, at the outset, the federal definition of "gross estate." Tax-Gen. § 7-301(b). (The term "'estate' means the federal gross estate of the decedent as determined by Subtitle B of the Internal Revenue Code . . .."). . . . Thus, the Maryland estate means the federal gross estate – as *increased* by any property not otherwise included in the federal gross estate that is deemed to be included pursuant to § 7-309(b)(6) of this subtitle. Tax-Gen. § 7-301(b).

Ms. Taylor's [E]state was properly reported by [the personal representative] on the Estate's federal estate tax return as $5,582,245 on her date of death. This value, pursuant to 26 U.S.C § 2044(a), included the value of the property in which Ms. Taylor had "a qualifying income interest for life[,]" which was Ms. Taylor's QTIP property. There is no statute or statutory provision that authorizes [the personal representative] to subtract the value of Ms. Taylor's QTIP property from her federal gross estate for Maryland [e]state tax purposes.

*Tax Court Proceeding* at 4-5. The personal representative filed an appeal with the Circuit Court for Washington County on September 17, 2015. The Comptroller filed a cross-petition for review of the Tax Court's decision to abate the late penalty payment.

### 2. Circuit Court Proceeding

The circuit court reversed the Tax Court's assessment of taxes and interest against the Estate. *In the Matter of Richard Reeves Taylor*, Case No. 21-C-15-055059; Memorandum Opinion of the Court dated Nov. 23, 2016.

The circuit court indicated that the Tax Court erred in concluding that Ms. Taylor's federal gross estate consisted entirely of personal property, because the trust assets "were not and never were" the property of Ms. Taylor. According to the circuit court, Ms. Taylor never had legal title to the trust assets because legal title was transferred to the trust beneficiaries. That property right vested in the beneficiaries at the time of Mr. Taylor's death in 1989.

6

The circuit court held that the federal QTIP election simply enabled the trust assets to be taxable as part of the federal estate; the election did not convert the trust assets into Ms. Taylor's personal property which could be subjected to Maryland estate tax.

The circuit court explained that, because the trust assets were not the property of Ms. Taylor, the only way for the State to impose taxes on the assets would be through statutory authority. After conducting a statutory analysis of Tax-Gen. §§ 7-301(b) and (d), 7-302, and 7-309(b)(5) and (b)(6), the circuit court concluded that the Tax Court had erred in assessing the estate tax on the trust assets.

The circuit court also held that imposition of a Maryland estate tax on the trust assets violated the Fourteenth Amendment to the U.S. Constitution and the Maryland Declaration of Rights, because the State had taxed property outside its jurisdiction and taxed an item from which this State had received no benefit.

### 3. Court of Special Appeals Proceeding

The Court of Special Appeals affirmed the decision of the circuit court. The Court held that "the Tax Court's decision was premised upon an erroneous conclusion of law, and the Comptroller lacks the authority to tax the [trust assets] as part of Ms. Taylor's Maryland estate." *Taylor*, 238 Md. App. at 152, 189 A.3d at 807. The Court of Special Appeals based this holding on its statutory analysis, which mirrored the circuit court's analysis.

The Court also held that "[g]iven no tax was authorized under the statute, no penalty could be properly charged against the Estate." *Id.*

7

The Court of Special Appeals did not address the circuit court's decision regarding the Fourteenth Amendment and the Maryland Declaration of Rights, "as it was not decided by the Tax Court." *Id.*

## STANDARD OF REVIEW

[D]ecisions of the Tax Court receive the same judicial review as other administrative agencies. In this context [. . . we] evaluate[ ] the decision of the agency. A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law. We cannot uphold the Tax Court's decision on grounds other than the findings and reasons set forth by the Tax Court.

*Taylor*, 238 Md. App. at 145, 189 A.3d at 803 (internal citations and quotations omitted).

## DISCUSSION

**A. The value of the property contained in Ms. Taylor's Maryland estate includes the value of her QTIP, and the transfer of such property at death is subject to the Maryland estate tax.**

1. <u>Ms. Taylor was deemed to have a property interest in the marital trust that transferred upon her death, such that the entire value of the marital trust is included in her federal gross estate.</u>

The personal representative contends that Ms. Taylor did not own, control, or have any interest in the assets of the QTIP trust, nor was there a transfer of trust property at her death. The personal representative asserts that:

[O]n Mr. Taylor's death, legal title to the QTIP property transferred to the trustees of the trust and equitable title transferred to Mr. Taylor's son and grandchildren, the remainder beneficiaries of the trust. Accordingly, the transfer of the QTIP property occurred in Michigan in 1989 under Mr. Taylor's [W]ill, not in Maryland in 2013 when Ms. Taylor died.

8

However, the personal representative fails to adequately consider the estate tax scheme and the creation of QTIP trusts. Ms. Taylor's property interest in the marital trust was *deemed* to have transferred upon Ms. Taylor's death. We review the general estate tax scheme and creation of QTIP trusts to explain our conclusion.

*Estate Taxes and QTIP Trusts*

The estate tax applies on the transfer of assets from an estate upon one's death. The federal code, however, provides an exception for married couples through the marital deduction, codified in 26 U.S.C. §2056(a). The marital deduction generally shields the outright transfer of property, from the first-to-die spouse to the surviving spouse, from estate taxes. This marital "exemption is premised on the expectation that the property will be subject to estate tax on the death of the second spouse (unless consumed during her life or transferred by gift and thus subject to gift tax)." *Estate of Sommers v. Commissioner of Internal Revenue*, 149 T.C. 209, 223 (2017). Pursuant to 26 U.S.C. §2056(b)(1), transfers of 'terminable' property interests are not generally eligible for the marital deduction because they are not included in the surviving spouse's estate.[3] This is known

---

[3] Section 2056(b)(1) provides as to marital deductions:

(b) Limitation in the case of life estate or other terminable interest.
(1) General rule[:] Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no (marital) deduction shall be allowed * * *.

*Estate of Smith v. Commissioner of Internal Revenue*, 565 F.2d 455, 456, n.2 (7th Cir. 1977).

as the "terminable interest rule." *Estate of Smith v. Commissioner of Internal Revenue*, 565 F.2d 455, 459 (7th Cir. 1977).

In the instant matter, Ms. Taylor had a terminable property interest because she had a qualifying terminable income interest for life, paid annually, through operation of the QTIP trust. *See* 26 U.S.C. § 2056(b)(7)(B)(i)(II). However, the terminable interest rule has an exception for QTIP assets to enable application of the marital deduction.

> The QTIP rules provide an election under which a qualifying terminable interest can be covered by the marital deduction at the death of the first spouse with the proviso that the underlying property be included in the estate of the second spouse upon death. *See* secs. 2056(b)(7), 2044. In effect, the rules employ a fiction that **treats** the second spouse as owning the subject property outright, rather than owning merely a life or other terminable interest.

*Estate of Sommers*, 149 T.C. at 223 (emphasis added). The provisions creating the QTIP option, codified in 26 USC §§ 2044 and 2056, create two fictional legal transfers so that the full value of the QTIP assets is captured by the estate tax upon the surviving spouse's death. The first fictional transfer occurs upon the death of the first-to-die spouse, when QTIP assets "shall be treated as" passing from the first-to-die spouse to the surviving spouse. *See* §§ 2056(b)(7)(A)(i), (b)(7)(B)(i)(I). The second fictional transfer occurs when the surviving spouse dies and the QTIP assets "shall be treated as property passing from" the surviving spouse under §2044(c). This second fictional transfer triggers the estate tax, and the entire value of the QTIP assets is included in the surviving spouse's federal gross estate under §2044(a).

10

Our review of the federal estate tax scheme and QTIP trusts reveals that the entire value of the marital trust was *deemed* to have transferred upon Ms. Taylor's death. *See supra*; *see also In re Estate of Bracken*, 175 Wash.2d 549, 577-78, 290 P.3d 99, 112 (2012) (Madsen, C.J., concurring/dissenting), *overturned by statute* ("[U]nder federal law there are two relevant transfers where QTIP property is concerned. . . . When the surviving spouse dies, a second transfer of the entire property is deemed to occur—the transfer of the property from the surviving spouse to the third party remainder beneficiaries."); *see* 2006 Leg. Sess., Fiscal and Policy Note, Senate Bill 2 ("SB 2") (stating that "[t]he value of the QTIP that qualifies for the marital deduction as a result of the election is included in the **surviving spouse's** estate when the surviving spouse dies." (emphasis added)).

The Comptroller did not seek to tax Mr. Taylor's property or the transfer of his property, but rather sought to tax the deemed transfer of the QTIP property upon Ms. Taylor's death as a Maryland resident.[4]

> 2. <u>The value of Ms. Taylor's Maryland estate is the same as the value of her federal gross estate.</u>

The "Maryland estate" is defined as "the part of an **estate** that this State has the power to subject to the Maryland estate tax." *See* Tax-Gen. § 7-301(d) (emphasis added). Furthermore, an "estate" is defined as "**the federal gross estate** of a decedent, as determined by . . . the Internal Revenue Code, as **increased by** any property not otherwise

---

[4] Ms. Taylor paid income taxes on her annual income from the trust. However, income tax is separate from the estate tax that arose in the case at bar. It is proper to levy estate taxes upon the transfer of Ms. Taylor's property interest in the QTIP.

included in the federal gross estate that is deemed to be included pursuant to § 7-309(b)(6) of this subtitle." *See* Tax-Gen. § 7-301(b) (emphasis added). Putting these definitions together results in two parts to a Maryland decedent's estate: (1) the federal gross estate as determined by the Internal Revenue Code, **plus** (2) any property not otherwise in the federal gross estate that is included in Tax-Gen. § 7-309(b)(6).

As to the first part of the Estate, the personal representative properly reported a value of $5,582,245 for Ms. Taylor's federal gross estate. As to the second part of the Estate, we must consider the statutory language of Tax-Gen. § 7-309(b) in the context of the definition for an "estate." Accordingly, Tax-Gen. § 7-309(b)(6) serves to *increase* the value of the Estate (an estate is the federal gross estate, **as increased by** property pursuant to § 7-309(b)(6)), and is inapplicable for decreasing Ms. Taylor's Maryland estate. We explain more fully, *infra*.

*Plain Language of Tax-Gen. § 7-309(b)*

Tax-Gen § 7-309(b)(6)(i) states:

For purposes of calculating Maryland estate tax, a decedent shall be deemed to have had a qualifying income interest for life under § 2044(a) of the Internal Revenue Code with regard to any property for which a marital deduction qualified terminable interest property election was made for the decedent's predeceased spouse on a timely filed Maryland estate tax return under paragraph (5) of this subsection.

Paragraph (5), in turn, states:

(5)(i) With regard to an election to treat property as marital deduction qualified terminable interest property in calculating the Maryland estate tax, an irrevocable election made on a timely filed Maryland estate tax return shall be deemed to be an election as required by § 2056(b)(7)(B)(i), (iii), and (v) of the Internal Revenue Code.

12

(ii) An election under this paragraph made on a timely filed Maryland estate tax return shall be recognized for purposes of calculating the Maryland estate tax **even if an inconsistent election is made for the same decedent for federal estate tax purposes.**

(emphasis added). Cumulatively, subsections (5) and (6) provide that a spouse who dies first may elect a QTIP on the Maryland estate tax return. Specifically, Tax-Gen § 7-309(b)(5)(ii) enables a spouse to make a Maryland QTIP election without also electing the QTIP on the federal return.[5]

The plain language of an "estate," as defined by Tax-Gen. § 7-301(b), reveals that Tax-Gen. § 7-309(b)(6) increases the value of the Maryland estate. Therefore, the provision is inapplicable for reducing the value of Ms. Taylor's Estate. The unambiguous plain language of the statute renders it irrelevant to any reduction in Ms. Taylor's Estate. In addition, the definition of an "estate" provides that Tax-Gen. § 7-309(b)(6) applies to those properties "not otherwise included in the federal gross estate[.]" *See* Tax-Gen. § 7-301(b). In the case at bar, Ms. Taylor's QTIP was included in her federal gross estate under

---

[5] According to the Comptroller:

A taxpayer [may opt to make a Maryland QTIP election without making a corresponding federal QTIP election] if, for example, the first-dying spouse's estate fell below the federal filing threshold, thus eliminating the tax benefit of a QTIP election. Because in such a case there would have been no federal QTIP election by the first-dying spouse, the QTIP would not be included in the surviving spouse's federal gross estate. **Section 7-309(b)(6)(i) thus requires augmentation of the Maryland estate of the surviving spouse to account for the value of the Maryland QTIP and to ensure that the Estate does not receive a windfall.** (emphasis added).

13

applicable federal law and there was no additional property to augment the Maryland estate. Given the lack of any augmenting property, Tax-Gen. § 7-309(b)(6) is irrelevant.

The personal representative contends that Tax-Gen. § 7-309(b)(6) results in a decrease in Ms. Taylor's Estate because a Maryland QTIP election was never filed.[6] Yet the personal representative and dissent neglect the plain language of an estate and the augmentation provisions of Tax-Gen. § 7-309(6).

In the event of an ambiguity in the plain language of the statute, we look to the legislative history of Tax-Gen. § 7-309(b)(6) for clarity. ("If the true legislative intent cannot be readily determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia [including] . . . the legislative history[.]" *Bellard v. State*, 452 Md. 467, 482, 157 A.3d 272, 280 (2017)). "In addition, the meaning of the plainest language is controlled by the context in which i[t] appears[,]" *id.*, 157 A.3d at 281, and it is necessary to consult indicia, such as legislative history, to ascertain legislative intent. We will therefore consider the legislative history of Tax-Gen. § 7-309 to better-inform our understanding of the relationship between the federal and Maryland estate tax.

*Legislative History of Tax-Gen. § 7-309(b)*

> [In 2001, Congress enacted the Economic Growth and Tax Relief Reconciliation Act, which] provided for the reduction and ultimate repeal of the credit allowed under the federal estate tax for state death taxes paid

---

[6] The dissent similarly contends that, absent a Maryland QTIP election, there is no justification for "imposing a state-level estate tax in a QTIP trust[.]" *Dissenting Opinion* at 3.

14

(federal credit).[7] Maryland, like most states, had an estate tax that was linked directly to the federal credit. Without statutory changes by the General Assembly, the repeal of the federal credit under the 2001 federal tax Act would have automatically repealed the State estate tax because of the link between the State tax and federal credit.

2006 Leg. Sess., Fiscal and Policy Note, SB 2. In essence, prior to the 2001 federal act, state governments enjoyed revenue sharing with the federal government for purposes of the estate tax.[8] As a result of the federal government's 2001 legislation, a number of states amended their tax codes to preserve state estate taxes. In 2002 and 2004, the Maryland General Assembly partially decoupled Maryland's estate tax from the federal estate tax. *Id.*[9]

In 2006, the General Assembly amended Subtitle 7 of the Tax-Gen. Article through Chapter 225 (SB 2). SB 2 made changes to § 7-309, including enactment of subsections (b)(5) and (6). The definition of an "estate" was also amended in Tax-Gen. §7-301 to reflect the changes in § 7-309(b)(5) and (6). As discussed *supra*, the text of § 7-309(b)(5) and (6) enabled Maryland estates to make inconsistent QTIP elections on their federal and

---

[7] Pursuant to Tax-Gen. § 7-304(a), "'federal credit' means the maximum credit for death taxes paid to any state that is allowable . . . against the federal estate tax of a decedent as reduced by the proportion that the amount of the estate not included in the Maryland estate bears to the amount of the entire estate of the decedent."

[8] Not only did the 2001 federal legislation phase out and repeal the tax credit, but it also increased the unified credit amount that determines if an estate is subject to tax. 2006 Leg. Sess., Senate Budget and Taxation Committee, SB 2.

[9] In 2002, the General Assembly passed the Budget Reconciliation and Financing Act, which enabled the State tax to continue as if the federal credit had not phased out. 2006 Leg. Sess., Fiscal and Policy Note, SB 2. In 2004, the General Assembly further decoupled the State tax from increases in the federal unified credit. *Id.*

15

Maryland estate tax returns. In sum, the effect of SB 2 on Tax-Gen. § 7-309 was merely to enable inconsistent QTIP elections due to the 2001 federal Act, contrary to the dissent and personal representative's contention that Mr. Taylor's estate *had* to elect a marital deduction on its Maryland return. The historical context of SB 2 provides that Tax-Gen. § 7-309(b)(5) and (6) simply sought to retain the Maryland estate tax by ensuring that Maryland estate taxes were captured even if an estate opted not to make a federal QTIP election: this State opted to maintain the benefit of estate taxes. The concern was not over whether an estate filed a *Maryland* QTIP election because the statute meant to clarify that this State could collect an estate tax absent a federal election. Interpreting the statute otherwise could result in a loophole, whereby this State "would tax only the QTIP trusts that were elected in Maryland tax returns, and not QTIP trusts that were created in other States, where the beneficiary of the trust resided in Maryland at the time of death." *Concurring opinion* at 10 n. 6.

We conclude that both the plain language and legislative history of Tax-Gen. § 7-309 reveal that the value of Ms. Taylor's estate is the same for federal and Maryland estate tax purposes. As provided by the Tax Court, there is no provision that authorizes the personal representative "to subtract the value of Ms. Taylor's QTIP property from her federal gross estate for Maryland Estate tax purposes." Upon her death in Maryland, Ms. Taylor had a property interest in the lifetime income from the residuary trust. By operation of 26 U.S.C. § 2044, Ms. Taylor's interest is treated "essentially as . . . outright ownership

16

of the property,"[10] and the entire value of the marital trust is properly taxed by operation of the federal taxation scheme. Ms. Taylor's fictional "outright ownership" interest did not dissipate upon her death. That value was deemed to have transferred to the beneficiaries of the trust and is subject to taxation **by this State** pursuant to the definition of an "estate" in Tax-Gen. § 7-301(b). Neither Tax-Gen. § 7-309(b)(5) or (6) operate to decrease the value of Ms. Taylor's federal gross estate.[11] We affirm the decision of the Tax Court on the first issue and conclude that the value of the QTIP trust is subject to Maryland estate tax.

**B. The Tax Court did not improperly waive the late-filing penalty because it had broad discretion to waive the penalty for "reasonable cause," which the personal representative sufficiently demonstrated.**

[W]hen the Tax Court considers appeals from a tax collector's refusal to abate an interest assessment, that court considers whether the party has demonstrated **with affirmative evidence that reasonable cause exists** or that the tax collector's decision was an obvious error. *See* [Tax-Gen.] § 13–528(b). Under this standard, a tax collector's assessment of interest will not be overturned unless the complaining party provides affirmative evidence

---

[10] Boris I. Bittker & Lawrence Lokken, FEDERAL TAXATION OF INCOME, ESTATES & GIFTS, 129-67 ¶ 129.4.5 (Warren, Gorham & Lamont eds., 2nd ed. 1993).

[11] The dissent provides that Tax-Gen. § 7-309(d) contemplates "the possibility that there would be property included in an 'estate' that Maryland [does] *not* have the authority to tax[.]" *Dissenting Opinion* at 2 (quoting *Taylor*, 238 Md. App. at 150, 189 A.3d at 805).

We agree that there are limited circumstances in which the Maryland estate is different from the federal gross estate. For example, estates in this State with nonresident owners are subject only to taxation on the value of in-state property. *See generally City Bank Farmers Trust Co. v. Schnader*, 293 U.S. 112, 55 S.Ct. 29 (1934) (holding that taxing authority rests with the state where the property has an actual situs); *see also* Tax-Gen. § 7-302(2).

demonstrating reasonable cause for the abatement or the tax collector has made an obvious error.

*Frey v. Comptroller*, 422 Md. 111, 187, 29 A.3d 475, 519 (2011) (emphasis added). In *Frey,* this Court held that the Tax Court has the authority to waive interest for "reasonable cause" and the party appealing an assessment bears the burden of proving that the assessment was in error through affirmative evidence. *Id.* Though the issue in *Frey* was the Tax Court's authority to waive interest as opposed to late payments, the Court found that the authority would likely extend to the waiver of penalties as well. *Id.* at 185, 29 A.3d at 518, n.21.

In a response filed during the Tax Court proceeding, the Comptroller conceded that the Tax Court could waive late penalties under Tax-Gen. § 13-714.[12] Therefore, the Comptroller does not contend that the Tax Court did not have the authority to waive the late penalty. Rather, the Comptroller asserts that the personal representative failed to

---

[12] Tax-Gen. § 13-714 states that: "For reasonable cause, a tax collector may waive a penalty under this subtitle."

Tax-Gen. § 3-103(a)(4) is also relevant to abatements, and states, in relevant part that:

(a) The Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any tax issue, including:
*** 
(4) the application for an abatement, reduction, or revision of any assessment or tax[.]
***

18

produce affirmative evidence to demonstrate reasonable cause for the late penalty abatement. Specifically, the Comptroller argues that reasonable cause is generally defined by the exercise of "ordinary prudence" and the "degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." Because the personal representative failed to provide affirmative evidence that the Estate acted with "ordinary prudence," the Comptroller contends that the Tax Court improperly waived the late penalty.

Contrary to the Comptroller's argument, we conclude that the personal representative did provide sufficient affirmative evidence for waiver of the late penalty. The Personal Representative contends that:

> The evidence before the Tax Court included the letters to the Comptroller from the Personal Representative, which specifically set forth the [legal] reasons why the Personal Representative thought the tax on the QTIP was not due. The Personal Representative also submitted extensive briefing and argument before the Tax Court on why the tax was not due.

Despite this evidence, the Comptroller contends that the evidence is insufficient for two reasons: (i) legal argument is inadequate to constitute sufficient affirmative evidence, and (ii) the personal representative's "good faith" argument cannot be conflated with a showing of "reasonable cause."

We find it difficult to conceptualize that a coherent legal argument based on the peculiar facts of the case, even if erroneous, does not constitute sufficient affirmative evidence for waiving the late penalty. Furthermore, the Comptroller neglects to consider the history of Tax-Gen. § 13-714 in advancing the "good faith" argument. When the General Assembly created the Tax-Gen. Article in 1988, Tax-Gen. § 13-714 was codified

19

as § 13-701(d).  *See* 1988 Md. Laws at 544.  The Revisor's Note to that section specifies that "[w]illfullness and intent are no longer determinative factors [for waiving a taxing penalty] . . . **but may be considered as an element of 'reasonable cause**[.]'"  *Id.* (emphasis added).  According to the Revisor's Note, though good faith alone cannot operate to provide "reasonable cause," good faith *may be considered* for waiving a late penalty.  Certainly, the personal representative advanced a good faith argument, litigated before this Court for its relevance, to argue that Ms. Taylor's QTIP interest was not subject to Maryland estate tax.

The Comptroller also disregards a 1985 opinion from the Attorney General, which provided advice on the "Comptroller's authority to waive certain penalty and interest charges on late-filed sales and admissions tax returns."  70 Md. Op. Atty. Gen. 208 (Md.A.G. 1985).  As explained in the opinion, Tax-Gen. § 13-714's predecessors, Article 81 §§ 365(c) and 407(c), enabled waiver of penalties "for cause shown" and for "good cause shown."  We consider these terms equivalent to the "reasonable cause" standard before us.

The 1985 Opinion of the Attorney General found that 'cause' and 'good cause' are synonymous,[13] and that "a general test of 'ordinary prudence' or 'reasonable diligence' has

---

[13] *See also Francois v. Alberti Van and Storage Co.*, 285 Md. 663, 671-72, 404 A.2d 1058, 1063 (1979), which explained that "cause" was equated with "good cause" in *Toomey v. Gomeringer*, 235 Md. 456, 460, 201 A.2d 842, 843 (1964).

been recognized as satisfying the 'good cause' standard." The Attorney General advised that:

> [T]he Comptroller has comparably broad discretion to determine whether a taxpayer had shown 'ordinary prudence' or 'reasonable diligence' and, hence, has met the statutory standard of good cause. Under one view of the waiver provisions, the taxpayer would meet the 'good cause shown' standard by his or her demonstrated record of past timely filing. In other words, that taxpayer will have demonstrated 'ordinary prudence' or 'reasonable diligence' through a pattern of compliance with the applicable law, and the Comptroller may properly treat one instance of untimely filing as not vitiating that diligent track record.

As such, the 1985 opinion provides that "reasonable cause" may be found under a variety of circumstances to enable the waiver of late penalties. In the instant case, the personal representative adequately met the threshold of "reasonable cause" to permit waiver of the late penalty.

The Tax Court had broad authority to waive the late penalty. As "an adjudicatory administrative agency . . . the Tax Court's factual findings and the inferences drawn therefrom" are reviewed under a substantial evidence standard. *Frey*, 422 Md. at 136-37, 29 A.3d at 489-90. Under the standard,

> The question for the reviewing court is ... whether the [agency's] conclusions reasonably may be based upon the facts proven. The [reviewing] court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness.

*Alviani v. Dixon*, 365 Md. 95, 108, 775 A.2d 1234, 1242 (2001) (internal quotations and citations omitted). In the instant matter, we conclude that the Tax Court reasonably waived the late penalty based on its assessment that the personal representative provided sufficient

21

evidence to meet the threshold of "reasonable cause." The Tax Court considered the personal representative's arguments and concluded that those arguments met the threshold of "reasonable cause" to waive the late penalty.

**C. This Court's review is limited to the Tax Court's findings and to the reasons for those findings; because the Court did not expressly make a finding regarding the constitutionality of the tax, the issue is not preserved for appeal.**

> Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. **However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.**

*United Steelworkers v. Beth. Steel,* 298 Md. 665, 679, 472 A.2d 62, 69 (1984) (emphasis added). The personal representative rightfully contends that it raised the issue of constitutionality at the agency level. However, in an administrative proceeding, raising the issue is insufficient to preserve it on appeal. This Court's holding in *United Steelworkers*, quoted *supra*, reveals the distinction for preserving an issue at the trial court level as opposed to the agency level, the latter of which is relevant to the case at bar. Though the Tax Court contemplated the personal representative's constitutionality argument,[14] it did not base its final decision on the issue. Rather, the Court's Memorandum and Order

---

[14] The Tax Court stated the following during trial, "[a]nd not withstanding [*sic*] the statutory arguments that you made . . . I mean I do have some real concerns about the constitutionality as applied with respect to these facts. So I'm just going to have to look at this very closely."

focused on statutory interpretation. The Court of Special Appeals reflected this limitation in its opinion:

> We need not address the circuit court's decision regarding the Fourteenth Amendment to the United States Constitution and the Maryland Declaration of Rights, **as it was not decided by the Tax Court**. *See Gore Enterprise Holdings, Inc. v. Comptroller of the Treasury*, 437 Md. 492, 503, 87 A.3d 1263 (2014) (internal citations omitted) ("We cannot uphold the Tax Court's decision 'on grounds other than the findings and reasons set forth by [the Tax Court]'").

*Taylor*, 238 Md. App. at 152, 189 A.3d at 807 (emphasis added). Because we conclude that any constitutional issues were not preserved, we decline to review the merits of the personal representative's constitutionality argument.[15]

---

[15] The personal representative and dissent contend that this State cannot constitutionally tax Ms. Taylor's Estate, because the QTIP assets have no nexus with Maryland. However, we determine that under the federal statutory scheme, Ms. Taylor was treated as having a (federal) property interest in the marital trust. By operation of the Maryland statutory definition of an "estate," Ms. Taylor's federal gross estate was one and the same as her Maryland estate, and the full value of the QTIP assets can be properly taxed by this State. *See* Tax-Gen. § 7-302.

According to the dissent, an estate tax deferral provides the *quid pro quo* that allows a state to tax the estate upon the death of a second spouse. Because this State did not provide any kind of "deferral benefit" to Ms. Taylor, the dissent contends that Maryland has no right to a belated estate tax collection. However, Ms. Taylor was a Maryland resident and had a property interest that transferred upon her death. Therefore, a "deferral benefit" indeed existed, and this State has a constitutional right to tax the full value of the QTIP. If we accept the dissent's posture, the reported value of Ms. Taylor's federal gross estate decreases by $4,108,048.02 at the state level. This is contrary to an even exchange of benefits that characterizes the *quid pro quo* arrangement.

Furthermore, the dissent provides that "taxation under these facts would produce arbitrary and unreasonable results that violate due process[ ]" due to "a serious risk of double or inconsistent taxation." *Dissenting opinion* at 8, 11. However, the tit-for-tat nature of the *quid pro quo* contemplates an equal trade-off.

**CONCLUSION**

Contrary to the holding of the Court of Special Appeals, we conclude that Ms. Taylor had a property interest in the full value of the marital trust by operation of the fictional transfers created through the federal statutory scheme. Pursuant to 26 U.S.C. § 2044 Ms. Taylor's interest is treated as outright ownership of the QTIP property and the marital deduction is allowed for the entire value of the QTIP trust. By operation of Md. Code, Tax-Gen. § 7-301, in conjunction with our reading of Tax-Gen § 7-309(b)(5) and (b)(6), we conclude that Ms. Taylor's federal gross estate is the same as her Maryland estate, such that the entire value of the marital trust is rightfully taxed by this State.

We agree with the Court of Special Appeals holding as to the late-filing penalty, but on separate grounds from the rationale advanced by our intermediate court. We conclude that the Tax Court did not improperly waive the penalty because it had broad discretion to waive the penalty for "reasonable cause," which the personal representative sufficiently demonstrated.

As to the personal representative's cross-appeal, we note that this Court's review is limited to the Tax Court's findings and to the reasons for those findings. Because the Tax Court did not expressly make a finding regarding the constitutionality of the tax, the issue is not preserved for appeal and we therefore decline to consider the personal representative's constitutional arguments on the merits.

24

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED IN PART AND AFFIRMED IN PART. COSTS TO BE PAID 2/3 BY RESPONDENT/CROSS-PETITIONER AND 1/3 BY PETITIONER/CROSS-RESPONDENT.**

Circuit Court for Washington County
Case No. 21-C-15-055059
Argued: April 8, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 56

September Term, 2018

_____

COMPTROLLER OF THE TREASURY

v.

RICHARD REEVES TAYLOR

_____

Barbera, C.J.
*Greene
McDonald
Watts
Hotten
Getty
Raker, Irma S. (Senior Judge,
Specially Assigned),

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: July 29, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Respectfully, I concur. I agree with the Majority that the Maryland estate tax applies to a Maryland resident's interest in a qualified terminable interest property ("QTIP")[1] trust that was created in another State. See Maj. Slip Op. at 1-2. I write separately because I arrive at this conclusion for reasons similar to, but slightly different from, the Majority's.[2]

Md. Code Ann., Tax-Gen. (1988, 2016 Repl. Vol.) ("TG") § 7-302(a)(1) provides that the Maryland estate "tax is imposed on the transfer of the Maryland estate of each decedent who, at the time of death, was[] a resident of this State[.]" Significantly, TG § 7-301(b) defines "estate" as follows: "'Estate' means the federal gross estate of a decedent, as determined by Subtitle B of the Internal Revenue Code, as increased by any property not otherwise included in the federal gross estate that is deemed to be included pursuant to [TG] § 7-309(b)(6)[.]" In other words, the Maryland estate tax applies to all of a Maryland resident's property that is subject to the federal estate tax, plus any of the Maryland

_____

[1]QTIP is

> [p]roperty that passes by a [] trust from a deceased spouse to the surviving spouse and that (if the executor so elects) qualifies for the marital deduction on condition that the surviving spouse is entitled to receive all income in payments made at least annually for life and that no one has the power to appoint the [QTIP] to anyone other than the surviving spouse. [] The purpose of the marital deduction is to permit deferral of estate taxes until the death of the surviving spouse. But [QTIP] is included in the surviving spouse's estate at death, where it is subject to the federal estate tax.

*Qualified-Terminable-Interest Property*, Black's Law Dictionary (10th ed. 2014). In turn, the marital deduction is "[a] federal tax deduction [that is] allowed for lifetime and testamentary transfers from one spouse to another." *Marital Deduction*, Black's Law Dictionary (10th ed. 2014) (citations omitted).

[2]I join the majority opinion as to the other questions presented. See Maj. Slip Op. at 1-2.

resident's property that "is deemed to be included [in a Maryland estate] pursuant to [TG] § 7-309(b)(6)[.]" TG § 7-301(b). In turn, TG § 7-309(b)(6)(i) states:

> For purposes of calculating Maryland estate tax, a decedent shall be deemed to have had a qualifying income interest for life under [26 U.S.C.] § 2044(a)[3] with regard to **any property for which a marital deduction [QTIP] election was made for the decedent's predeceased spouse on a timely filed Maryland estate tax return** under [TG § 7-309(b)](5)[.]

(Emphasis added). And, TG § 7-309(b)(5) states:

> (i) With regard to an election to treat property as marital deduction [QTIP] in calculating the Maryland estate tax, an irrevocable election made on a timely filed Maryland estate tax return shall be deemed to be an election as required by [26 U.S.C.] § 2056(b)(7)(B)(i), (iii), and (v)[].[4]

> (ii) An election under this paragraph made on a timely filed Maryland estate tax return shall be recognized for purposes of calculating the Maryland estate

---

[3]26 U.S.C. § 2044(a) provides that, for purposes of calculating the federal estate tax, generally, the value of a decedent's estate includes "any property . . . in which the decedent had a qualifying income interest for life." A qualifying income interest for life is a right that a married decedent bequeaths to the surviving spouse under certain circumstances. See 26 U.S.C. § 2056(b)(7)(B)(ii). Specifically,

> [t]he surviving spouse has a qualifying income interest for life if--

> (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

> (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Id.

[4]26 U.S.C. § 2056(b)(7) governs bequests of interests in QTIP trusts. 26 U.S.C. § 2056(b)(7)(B)(i) defines QTIP as "property-- (I) which passes from the decedent, (II) in which the surviving spouse has a qualifying income interest for life, and (III) to which an election under this paragraph applies." (Paragraph breaks omitted). 26 U.S.C. § 2056(b)(7)(B)(iii) states: "The term 'property' includes an interest in property." 26 U.S.C. § 2056(b)(7)(B)(v) states that a QTIP "election . . . shall be made by the executor on the return of" the federal estate tax.

tax even if an inconsistent election is made for the same decedent for federal estate tax purposes.

In my view, TG § 7-301(b)'s plain language establishes that, where a Maryland resident's interest in a QTIP trust that was created in another State is subject to the federal estate tax, it is also subject to the Maryland estate tax. TG § 7-301(b) provides that the word "'[e]state' means the federal gross estate of a decedent, . . . as increased by any property not otherwise included in the federal gross estate that is deemed to be included pursuant to [TG] § 7-309(b)(6)[.]" Thus, where a Maryland resident's property is subject to federal estate tax, it is also subject to the Maryland estate tax. TG § 7-301(b) does not make an exception from the Maryland estate tax for any particular kind of property, such as a Maryland resident's interest in a QTIP trust that was created in another State.

Nor does TG § 7-309(b)(6)(i) include an exception from the Maryland estate tax for a Maryland resident's interest in a QTIP trust that was created in another State. TG § 7-301(b)'s plain language belies the existence of such an exception; TG § 7-309(b)(6)(i)'s plain language does the same; and TG § 7-301(b)'s and TG § 7-309(b)(6)(i)'s legislative history establishes that the General Assembly did not intend to create such an exception.

To begin, TG § 7-301(b) provides that the word "'[e]state' means the federal gross estate of a decedent, . . . as increased by any property not otherwise included in the federal gross estate that is deemed to be included pursuant to [TG] § 7-309(b)(6)[.]" TG § 7-301(b) unambiguously demonstrates that: (1) the Maryland estate tax applies to all property of a Maryland resident that is subject to the federal estate tax; and (2) the Maryland estate tax also applies to any property of a Maryland resident that, under TG § 7-309(b)(6), "is

- 3 -

deemed to be included" in a Maryland estate. In other words, TG § 7-301(b) provides that TG § 7-309(b)(6) can only "increase[]"—not decrease—the amount of property that is subject to the Maryland estate tax. It inescapably follows that TG § 7-309(b)(6) cannot except any particular kind of property from the Maryland estate tax.

This interpretation of TG § 7-301(b) is consistent with the Tax Court's decision in this case. Significantly, "[t]his Court accords great deference to the Tax Court's interpretation of the tax laws[.]" Lane v. Supervisor of Assessments of Montgomery Cty., 447 Md. 454, 464, 135 A.3d 828, 834 (2016) (cleaned up). Here, the Tax Court explained that TG § 7-309(b)(6)(i) does not bar the Comptroller of the Treasury, Petitioner/Cross-Respondent, "from assessing an estate tax deficiency on the transfer of QTIP" because, under TG § 7-301(b), a Maryland estate is the same as "the federal gross estate[,] as *increased* by any property not otherwise included in the federal gross estate that is deemed to be included pursuant to" TG § 7-309(b)(6). (Emphasis in original). I agree with the Tax Court's interpretation of TG § 7-301(b).

Like TG § 7-301(b)'s plain language, TG § 7-309(b)(6)(i)'s plain language establishes that TG § 7-309(b)(6)(i) does not preclude the Maryland estate tax from applying to a Maryland resident's interest in a QTIP trust that was created in another State. TG § 7-309(b)(6)(i) states in pertinent part:

> For purposes of calculating Maryland estate tax, a decedent shall be deemed to have had a qualifying income interest for life . . . with regard to any property for which a marital deduction [QTIP] election was made for the decedent's predeceased spouse on a timely filed Maryland estate tax return under [TG § 7-309(b)](5)[.]

In turn, TG § 7-309(b)(5)(ii) states: "An election under this paragraph made on a timely

- 4 -

filed Maryland estate tax return shall be recognized for purposes of calculating the Maryland estate tax even if an inconsistent election is made for the same decedent for federal estate tax purposes."

Read together, TG § 7-309(b)(6)(i) and (b)(5)(ii) simply mean that, where "a marital deduction [QTIP] election was made for the decedent's predeceased spouse on a timely filed Maryland estate tax return[,]" TG § 7-309(b)(6)(i), the decedent's interest in the QTIP trust is subject to the Maryland estate tax—regardless of whether the decedent's interest in the QTIP trust is also subject to the federal estate tax, see TG § 7-309(b)(5)(ii). TG § 7-309(b)(6)(i) and (b)(5)(ii) make clear that, even if a Maryland resident's interest in a QTIP trust is not subject to the federal estate tax, it is nonetheless subject to the Maryland estate tax if the QTIP election was made in a timely filed Maryland estate tax return.

Nothing in TG § 7-309(b)(6)(i) and (b)(5)(ii) indicates that the Maryland estate tax does not apply to a Maryland resident's interest in a QTIP trust that was created in another State. Stated otherwise, although TG § 7-309(b)(6)(i) and (b)(5)(ii) establish that the Maryland estate tax applies to a Maryland resident's interest in a QTIP trust if the QTIP election was made in a timely filed Maryland estate tax return, TG § 7-309(b)(6)(i) and (b)(5)(ii) do not state or imply that that is the only circumstance under which the Maryland estate tax can apply to a Maryland resident's interest in a QTIP trust. In short, TG § 7-309(b)(6)(i) and (b)(5)(ii) do not, in any way, contradict TG § 7-301(b)'s edict that all of a Maryland resident's property that is subject to the federal estate tax is also subject to the Maryland estate tax. This interpretation of TG § 7-301(b) and TG § 7-309(b)(6)(i) and (b)(5)(ii) squares with this Court's practice of harmonizing statutes that "appear to apply

to the same situation[.]" <u>Blackstone v. Sharma</u>, 461 Md. 87, 142-43, 191 A.3d 1188, 1221 (2018) (citation omitted).

Unlike the majority and concurring opinions, the dissent takes the position "that Maryland lacks the power to tax a []QTIP[] trust that was never claimed on a Maryland tax return." Dissent Slip Op. at 1. The dissent does not reach this conclusion by simply interpreting the plain language of TG § 7-301(b) or TG § 7-309(b)(6)(i) in a different way than the majority and concurring opinions do. Instead, the dissent would hold that Maryland lacks "the statutory and constitutional authority to tax the assets" at issue in the first place. Dissent Slip Op. at 3. The dissent addresses the statutory authority issue by noting that TG § 7-301(d) states: "'Maryland estate' means the part of an estate that this State has the power to subject to the Maryland estate tax." Dissent Slip Op. at 1-2. As the Court of Special Appeals did, the dissent extrapolates from TG § 7-301(d) the notion that "the legislature explicitly contemplated the possibility that there would be property included in an 'estate' that Maryland does not have the authority to tax, contrary to the assertions of the Tax Court and the Comptroller, that Maryland has the power to tax everything in the estate simply because it was in the federal estate." <u>Id.</u> (cleaned up). This is a leap in logic that is foreclosed by TG § 7-301(b), which defines "estate" as follows: "'Estate' means the federal gross estate of a decedent, as determined by Subtitle B of the Internal Revenue Code, as increased by any property not otherwise included in the federal gross estate that is deemed to be included pursuant to [TG] § 7-309(b)(6)[.]"

TG § 7-301(d) simply sets forth the commonsense principle that the Maryland estate includes only the assets that Maryland has the authority to tax. What Maryland has the

authority to tax is set forth by other provisions of the relevant Maryland statutes; and, under TG § 7-301(b), Maryland has the authority to tax property of a Maryland resident that is subject to the federal estate tax.[5] If, say, there were property of a Maryland resident that was not subject to the federal estate tax, and no Maryland statute made that property subject to the Maryland estate tax, then that property would not be subject to the Maryland estate tax, as TG § 7-301(d) provides.

Like their plain language, TG § 7-301(b)'s and TG § 7-309(b)(6)(i)'s legislative history establishes that the General Assembly did not intend to create an exception from the Maryland estate tax for a Maryland resident's interest in a QTIP trust that was created in another State. Before 2006, Md. Code Ann., Tax-Gen. (1988, 2004 Repl. Vol., 2005 Supp.) ("TG (2005)") § 7-301(b) simply stated: "'Estate' means the federal gross estate of a decedent, as determined by Subtitle B of the Internal Revenue Code." 2006 Md. Laws 1329 (Vol. II, Ch. 225, S.B. 2). In 2006, the General Assembly amended TG (2005) § 7-301(b) by adding the following clause to the end of the above-quoted sentence: "as increased by any property not otherwise included in the federal gross estate that is deemed to be included pursuant to [Md. Code Ann., Tax-Gen. (1988, 2004 Repl. Vol., 2006 Supp.) ("TG (2006)")] § 7-309(b)(6)[]." Id. The General Assembly also enacted TG (2006) § 7-309(b)(5) and (6), which are identical to TG § 7-309(b)(5) and (6). See id. at 1333.

---

[5]Where a Maryland resident dies, all of his or her property that is subject to the federal estate tax is also subject to the Maryland estate tax. Where a nonresident dies, however, the property that is subject to the Maryland estate tax is limited to "(i) real property permanently located in this State; or (ii) tangible personal property that has a taxable situs in this State." TG § 7-302(2) (paragraph breaks omitted).

- 7 -

Notably, since 2002—*i.e.*, both before and after the 2006 amendments to the statutes that govern the Maryland estate tax—TG § 7-304(b)(1) and its predecessors have provided that, generally, the Maryland estate tax is the amount, if any, by which the federal credit exceeds the total of certain death taxes other than the Maryland estate tax. Since 2002, TG § 7-304(a) and its predecessors have defined "federal credit" as follows:

> Subject to [TG] § 7-309[], in this section, "federal credit" means the maximum credit for death taxes paid to any state that is allowable . . . against the federal estate tax of a decedent as reduced by the proportion that the amount of the estate not included in the Maryland estate bears to the amount of the entire estate of the decedent.

In 2006, the General Assembly effectively lowered the Maryland estate tax by amending TG (2005) § 7-309(b)(3)(iv) to provide that, generally, "the federal credit [that was] used to determine the Maryland estate tax [could] not exceed 16% of the amount by which the decedent's taxable estate . . . exceed[ed] $1,000,000[.]" 2006 Md. Laws 1332 (Vol. II, Ch. 225, S.B. 2). In the Fiscal and Policy Note of the bill through which the General Assembly amended the statutes that govern the Maryland estate tax in 2006, the Department of Legislative Services stated that the Board of Revenue Estimates predicted that the amendment to TG (2005) § 7-309(b)(3)(iv) would reduce revenues from the Maryland estate tax by approximately $8.6 million in Fiscal Year 2007. See Department of Legislative Services, Fiscal and Policy Note, S.B. 2 (2006) at 4, available at http://mgaleg.maryland.gov/2006rs/fnotes/bil_0002/sb0002.pdf [https://perma.cc/F93X-464A].

The Department of Legislative Services observed that, under proposed TG (2006) § 7-309(b)(5)(i), "the estate of the first spouse to die may make a QTIP election to reduce the decedent's estate below the $1.0 million Maryland filing threshold, which results in no

- 8 -

Maryland estate tax being due." Id. The Department of Legislative Services also noted that, under proposed TG (2006) § 7-309(b)(5)(ii), a QTIP "election on a timely filed Maryland estate tax return must be recognized for the purposes of calculating the Maryland estate tax even if an inconsistent election is made for the same decedent for federal estate tax purposes." Id. at 1. The Department of Legislative Services explained that proposed TG (2006) § 7-309(b)(5)(ii) was not expected to affect revenues from the Maryland estate tax because the Comptroller's existing practice was to allow an estate to make a QTIP election in a Maryland estate tax return even if the estate made an inconsistent election in a federal estate tax return. See id. at 4.

Two matters are conspicuously absent from the Fiscal and Policy Note. First, nowhere did the Department of Legislative Services state or imply that the 2006 amendments to the statutes that govern the Maryland estate tax would create an exception from the Maryland estate tax for a Maryland resident's interest in a QTIP trust that was created in another State. See id. at 1-4. Second, the Department of Legislative Services did not indicate that any QTIP-related amendment would reduce revenues from the Maryland estate tax. See id. at 4. It is reasonable to expect that, if the 2006 amendments to the statutes that govern the Maryland estate tax had created an exception from the Maryland estate tax for a Maryland resident's interest in a QTIP trust that was created in another State, the Fiscal and Policy Note would have stated as much, and would have included an estimate of the resulting reduction in revenues from the Maryland estate tax.

Indeed, if we adopted Taylor's position that the 2006 amendments created an exception from the Maryland estate tax for a Maryland resident's interest in a QTIP trust

- 9 -

that was created in another State, that would mean that the General Assembly essentially created a tax loophole by enacting TG (2006) § 7-309(b)(6)(i).[6] For example, suppose that two Maryland residents are married to each other. One spouse creates a QTIP trust outside of Maryland, bequeaths an interest in it to the other spouse, and then dies. The surviving spouse inherits the interest in the QTIP trust, and continues to live in Maryland for the rest of his or her life. Under Taylor's interpretation of TG (2006) § 7-309(b)(6)(i), once the surviving spouse dies as well, the interest in the QTIP trust would not be subject to the Maryland estate tax, simply because the QTIP trust was created outside of Maryland— even though, to reiterate, the surviving spouse was a Maryland resident when he or she died. I do not believe that the General Assembly intended TG (2006) § 7-309(b)(6)(i) to allow such a windfall for the surviving spouse's heirs.

In sum, under TG § 7-301(b), where a Maryland resident's interest in a QTIP trust that was created in another State is subject to the federal estate tax, it is also subject to the Maryland estate tax. And, TG § 7-309(b)(6)(i) does not create an exception, *i.e.*, a loophole, from the Maryland estate tax for a Maryland resident's interest in a QTIP trust that was created in another State.

For the above reasons, respectfully, I concur.

---

[6]The loophole would exist by virtue of the General Assembly allegedly enacting a provision that would tax only the QTIP trusts that were elected in Maryland tax returns, and not QTIP trusts that were created in other States, where the beneficiary of the trust resided in Maryland at the time of death. Obviously, if a person lives and dies in a State other than Maryland, his or her estate will not be subject to the Maryland estate tax. Comparing a Maryland resident to the resident of another State who did not make a QTIP election on that State's tax return does not mean that there is no loophole if TG (2006) § 7-309(b)(6)(i) created an exception.

Circuit Court for Washington County
Case No. 21-C-15-055059
Argued: April 8, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 56

September Term, 2018

_____

COMPTROLLER OF THE TREASURY

v.

RICHARD REEVES TAYLOR

_____

Barbera, C.J.
*Greene
McDonald
Watts
Hotten
Getty
Raker, Irma S. (Senior Judge,
Specially Assigned),

JJ.

_____

Dissenting Opinion by Getty, J.

_____

Filed: July 29, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

I respectfully dissent from the Majority's conclusion as to the first issue and would hold that Maryland lacks the power to tax a qualified terminable interest property ("QTIP") trust that was never claimed on a Maryland tax return. The QTIP deduction is premised on an exchange of benefits between the surviving spouse and the government granting a tax deferral. *See Estate of Mellinger v. C.I.R.*, 112 T.C. 26, 35 (1999) ("Inclusion in the estate of the second spouse to die . . . is the quid pro quo for allowing the marital deduction for the first spouse to die."). While the co-executors of John Taylor's estate claimed a federal QTIP deduction upon his death, [1] no corresponding election was made on a timely-filed Maryland estate tax return. Therefore, Margaret Taylor received no benefit from the State of Maryland that could justify subjecting the QTIP assets to the Maryland estate tax.

The Majority rests its holding on the idea that "the value of Ms. Taylor's estate is the same for federal and Maryland estate tax purposes." Majority Slip Op. at 11. *See also* Concurrence Slip Op. at 3 ("[W]here a Maryland resident's interest in a QTIP trust that was created in another State is subject to the federal estate tax, it is also subject to the Maryland estate tax."). As framed by the Majority, § 7-301 of the Tax—General Article ("TG") defines an "estate" simpliciter as "(1) the federal gross estate as determined by the Internal Revenue Code, plus (2) any property not otherwise in the federal gross estate that is included in [TG] § 7-309(b)(6)." However, TG § 7-301(d) limits the scope of an

---

[1] The term "co-executors" will be used throughout to refer collectively to the National Bank of Detroit and Margaret Taylor, who signed IRS Form 706 as co-executors of Mr. Taylor's estate. Maryland and Michigan employ the term "personal representative" to refer to the executor of an estate. *See* TG § 7-224(a). Richard Reeves Taylor served as personal representative of Mrs. Taylor's estate in Maryland.

individual's "**Maryland estate**" to "**the part of an estate** that this State has the power to subject to the Maryland estate tax." (Emphasis added). Construing this language strictly against the Comptroller,[2] it becomes clear that "the legislature explicitly contemplated the possibility that there would be property included in an 'estate' that Maryland [does] *not* have the authority to tax, contrary to the assertions of the Tax Court and the Comptroller, that Maryland has the power to tax everything in the estate simply because it was in the [federal] estate." *Comptroller v. Taylor*, 238 Md. App. 139, 149-150 (2018) (emphasis in original).

The deficiencies in the Comptroller's view are exemplified by the longstanding constitutional rule against taxation of tangible property with a permanent situs outside the taxing state. *City Bank Farmers Trust Co. v. Schnader*, 293 U.S. 112, 118-19 (1934) ("The power to regulate the transmission . . . of tangible personal property rests exclusively in the state in which the property has an actual situs, regardless of the domicile of the owner."); *Frick v. Pennsylvania*, 268 U.S. 473, 492-93 (1925). Had Mrs. Taylor owned real property located in Michigan, that property would be governed exclusively by Michigan law and remain wholly beyond Maryland's estate tax jurisdiction. *See Bish v. Bish,* 181 Md. 621, 627 (1943) (finding "real estate is governed by the law of the place where it is situated, and solely by such law."). Any such property would be included in her federal gross estate, but not within her Maryland estate.

---

[2] "When specifically interpreting tax statutes, this Court recognizes that any ambiguity within the statutory language must be interpreted in favor of the taxpayer." *Comptroller v. Clyde's of Chevy Chase, Inc.*, 377 Md. 471, 484 (2003).

Accordingly, by concluding that the QTIP's inclusion in Mrs. Taylor's **federal gross estate** is dispositive of its inclusion in her **Maryland estate**, the Majority overlooks the essential question of whether Maryland has the statutory and constitutional authority to tax the assets of this trust. As no transfer of assets occurred in Maryland, and no QTIP election was made on a timely filed Maryland tax return, I would hold that Maryland lacks the statutory authority to impose an estate tax on the corpus of this trust. Furthermore, Maryland's taxation of the QTIP without any nexus to the trust assets violates the due process requirements of the Fourteenth Amendment.

**A. Maryland Lacks Statutory Jurisdiction to Tax this QTIP, as no Transfer of Assets Occurred in Maryland, and no Corresponding Election was Claimed on a Timely-filed Maryland Tax Return.**

Building upon the erroneous assumption that the federal estate and the Maryland estate are entirely coextensive, the Majority leans on 26 U.S.C. §§ 2044(c) and 2056(b) to conclude "that the entire value of the marital trust was *deemed* to have transferred upon Mrs. Taylor's death." Majority Slip Op. at 11. *See also Estate of Sommers v. Comm'r of Internal Revenue*, 149 T.C. 209, 223 (2017) (finding that for the purpose of taxation, the federal rules "treat[ ] the second spouse as owning the subject property outright, rather than owning merely a life or other terminable interest."). Although this reasoning accurately reflects the consequences of a federal QTIP election, nothing in the federal scheme justifies imposing a state-level estate tax on a QTIP trust absent a corresponding state-level election.

As summarized by the Majority, the federal QTIP provisions "create two fictional legal transfers so that the full value of the QTIP assets is captured by the estate tax upon the surviving spouse's death." *See Estate of Brooks v. Comm'r of Revenue Serv's*, 325

- 3 -

Conn. 705, 711-12 (2017) (explaining that "a fictional transfer occurs from the first to die spouse to the surviving spouse, and a second fictional transfer occurs upon the death of the surviving spouse to the remainder beneficiaries.").[3] However, pursuant to § 2044(b)(1)(A), these fictions only materialize once the executor claims a corresponding QTIP deductible on their federal tax return. *See Bandy v. Clancy*, 449 Md. 577, 586 (2016) ("Treatment of property as QTIP property requires that the executor elect the property for treatment as QTIP property on the federal tax return for the estate."). This requirement reflects the purpose of the federal scheme: To enable a surviving spouse to defer payment on the estate of their partner, in exchange for allowing the government to recover that tax at a later time. Without the initial deferral, there is no tax for the government to recover.

Comparatively, the Maryland estate tax "is imposed on the transfer of the Maryland estate of each decedent who, at the time of death, was a resident of this State." TG § 7-302(a)(1). *See also Connor v. O'Hara*, 188 Md. 527, 531 (1947) ("Death taxes are not taxes on property, but on the transfer of property, i.e. estate taxes on transmission by the decedent, and inheritance taxes on receipt by the beneficiary."). However, "[t]he criterion for the taxable occasion is . . . when the estate passed to and vested in the beneficiary." *Safe Deposit & Trust Co. v. Bouse*, 181 Md. 351, 355 (1943). "Absent indication to the contrary, trusts vest at the time of the testator's death." *Taylor*, 238 Md. App. At 150. *See Wagner v.* State, 220 Md. App. 174, 187 (2014) ("The declaration of a trust transfers legal

---

[3] Under § 2056(b)(7)(A)(i), QTIP assets "shall be treated as passing to the surviving spouse" from the first-dying spouse. Subsequently, per 26 U.S.C. § 2044(c), these assets "shall be treated as property passing from the [surviving spouse]" as part of their federal gross estate.

title to the trustee"); *accord In re Estate of Bracken*, 290 P.3d 99, 107 (Wash. 2012) ("Property is transferred from a trustor when a trust is created, not when an income interest in the trust expires"); *Coolidge v. Long*, 282 U.S. 582, 605-06 (1931). Therefore, under Maryland law, QTIP assets are transferred not upon the death of the surviving spouse, but upon the creation and vestment of the trust through the will of the first-dying spouse.[4]

Maryland's statutory arrangement grants the personal representative an option to defer any tax of this transfer until the death of the surviving spouse. As with the federal scheme, Maryland achieves this result by "deeming" the QTIP assets a part of the surviving spouse's estate as quid pro quo for an initial deferral. TG § 7-309(b)(6)(i). However, "[i]t is the established rule not to extend the tax statute's provisions by implication, beyond the clear import of the language used . . . and not to enlarge the statute's operation so as to embrace matters not specifically pointed out." *Comptroller v. Citicorp Intern. Commc'ns, Inc.*, 389 Md. 156, 170 (2005) (quoting *Comptroller v. Gannett*, 356 Md. 699, 707-08 (1999)). Under the plain language of the Maryland scheme, this "deemed" transfer requires an irrevocable election on a timely filed Maryland tax return:

> For purposes of calculating Maryland estate tax, a decedent shall be deemed to have had a qualifying income interest for life . . . with regard to any property **for which a marital deduction qualified terminable interest property election was made** . . . **on a timely filed Maryland estate tax return** under paragraph (5) of this subsection.

---

[4] A QTIP that provides the surviving spouse a limited power of disposition over the trust assets, rather than devising those assets directly to the couple's descendants, would likely constitute a second transfer. *See Graves v. Elliott*, 307 U.S. 383, 386 (1939) (holding that, for purposes of taxation, "the power of disposition of property is the equivalent of ownership.").

TG § 7-309(b)(6)(i) (emphasis added). Accordingly, the Majority errs by finding this provision "inapplicable for reducing the value of Mrs. Taylor's Estate." Majority Slip Op. at 13. *See also* Concurrence Slip Op. at 4 ("TG § 7-309(b)(6)(i) does not preclude the Maryland estate tax from applying to a Maryland resident's interest in a QTIP trust that was created in another State."). Rather, nothing in these statutes provides for the *addition* of QTIP assets to a Maryland estate without a Maryland filing and a corresponding deferral.[5]

When the personal representative claims a QTIP deduction on a timely-filed Maryland tax return, they have deferred the tax associated with the transfer of assets from the first-dying spouse – it is this benefit that enables the State to reciprocally include the QTIP as part of their estate absent an actual second transfer. *See Bracken*, 290 P.3d at 108 (emphasizing that "QTIP property does not actually pass to or from the surviving spouse."). Where neither transfer nor deferral occurred in Maryland, the State lacks both the power and the justification to impose an estate tax – irrespective of the fictions employed at a federal level.

Applying this framework to the present case, a cursory review of the facts makes clear that Maryland has no grounds to tax the assets in this trust. Mr. Taylor's Michigan

---

[5] Although the Legislature amended this statute to encompass inconsistent filings following the decoupling of the Maryland and federal estate taxes in 2004, TG § 7-309(b)(5)(ii) only provides that **"[a]n election . . . made on a timely filed Maryland estate tax return** shall be recognized for purposes of calculating the Maryland estate tax even if an inconsistent election is made . . . for federal tax purposes." TG § 7-309(b)(5)(ii) (emphasis added). Nothing in this statute stands for the Majority's assertion that Maryland may recognize an inconsistent election made only on a federal return.

will transferred the entirety of the trust assets to its beneficiaries – his child, John Reeves Taylor, and his three grandchildren, Elizabeth Taylor Fox, John Henry Taylor, and Richard Reeves Taylor. Comparatively, Mrs. Taylor retained only a lifetime right to the income from those assets. These interests vested immediately upon Mr. Taylor's 1989 death in Michigan, leaving Mrs. Taylor no power of appointment or disposition, and no personal ownership of the trust assets. Accordingly, no assets remained to be valued and included as part of Mrs. Taylor's Maryland estate. *See Estate of Bonner v. U.S.*, 84 F.3d 196, 198 (5th Cir. 1996) ("An estate tax is an excise tax on the transfer of property at death and accordingly the valuation of property is to be made as of the moment of death."). As summarized by her personal representative,

> Because both legal and equitable title to the assets of the QTIP trust were transferred at the time of Mr. Taylor's death in Michigan, there was nothing for Maryland to tax when Mrs. Taylor died in Maryland 24 years later. . . . Mrs. Taylor did not own or have any rights to the assets comprising the QTIP. . . . [W]ithout either ownership or the power to dispose of the assets, Mrs. Taylor had nothing to tax in relation to the QTIP.

Resp. Br. at 13.

The Majority's holding transplants federal statutory fictions into a context incongruous with their design, and results in an overbroad construction of Maryland law. Neither the language nor the purpose of either the Maryland or federal schemes is fulfilled by imposing Maryland's estate tax on a QTIP trust without a corresponding Maryland election. Any taxable transfer of the QTIP assets occurred upon the death of Mrs. Taylor's predeceased husband in Michigan. Mrs. Taylor did not defer a state tax on these transfers by claiming a QTIP deduction on a timely-filed Maryland tax return, nor did she retain

control over the assets distributed in her husband's will to the QTIP trust. Accordingly, I would affirm the judgment of the Court of Special Appeals and hold that Maryland lacks the power to tax this trust.

**B. Taxation of This QTIP is Unconstitutional, as the Assets of the Trust Have no Nexus to Maryland, and Taxation under These Facts Would Produce Arbitrary and Unreasonable Results that Violate Due Process.**

Assessment of a Maryland estate tax on a trust that is not located in Maryland and has not been afforded the protection of Maryland law contravenes the Fourteenth Amendment of the United States Constitution.[6] The Comptroller asserts that the Constitution grants Maryland "plenary power to tax its domiciliaries and residents." Pet. Br. at 18. *See also Miller Bros. Co. v. Maryland,* 347 U.S. 340, 345 (1954) (finding "this Court has frequently held that domicile or residence . . . is an adequate basis for taxation, including income, property, and death taxes" (footnotes omitted)). However, this power is constrained by considerations of due process, which mandate "'some definite link, some minimum connection, between a state and the person, property, or transaction it seeks to tax.'" *Allied-Signal, Inc. v. Dir., Div. of Taxation,* 504 U.S. 768, 777 (1992) (quoting

---

[6] The Majority insists that the issue of constitutionality was not considered as part of the basis of the Tax Court's decision, and is therefore unavailable to be considered on this appeal. Majority Slip Op. at 22-23. *See also Gore Enterprise Holdings, Inc. v. Comptroller of the Treasury*, 437 Md. 492, 503 (2014) ("We cannot uphold the Tax Court's decision 'on grounds other than the findings and reasons set forth by [the Tax Court].' . . . Indeed, our review is narrow, and we will not substitute our judgement for the expertise of those persons who constitute the administrative agency.") (citations and internal quotation marks omitted). However, a Constitutional analysis is necessary to determine whether Maryland has the power to tax the QTIP assets as part of Taylor's Maryland estate. *See* TG § 7-301(d) (defining a Maryland estate as "the part of an estate **that this State has the power to subject to the Maryland estate tax**.") (Emphasis added).

*Miller Bros. Co.*, 347 U.S. at 344-345). "[N]o state may tax anything not within her jurisdiction without violating the Fourteenth Amendment. . . . [N]o state can tax the testamentary transfer of property wholly beyond her power[.]" *Farmers' Loan & Trust Co. v. Minnesota*, 280 U.S. 204, 210 (1930).

Under the Fourteenth Amendment, "the controlling question is whether the state has given anything for which it can ask return." *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444 (1940). "The Federal Constitution . . . leaves the states unrestricted in their power to tax those domiciled within them, so long as the tax imposed is upon property within the state or on privileges enjoyed there, and is not so palpably arbitrary or unreasonable as to infringe the Fourteenth Amendment." *Lawrence v. State Tax Comm'n of Mississippi*, 286 U.S. 276, 279-80 (1932). Although the federal government granted the estate a benefit in the form of a tax deferral, for which it may constitutionally impose an estate tax in return, Maryland has conferred no such privilege. As discussed *supra*, Mrs. Taylor neither availed herself of a Maryland deduction, nor did she transfer the QTIP assets as part of her estate. *See Bouse*, 181 Md. at 355 (finding "the State conferring the privilege of transmission of property . . . may require a person receiving the benefit of such privilege to pay an excise tax for its enjoyment."). Absent any exchange of benefits, "the fortuitous relocation of Mrs. Taylor to Maryland clearly cannot constitute the *quid pro quo* sufficient to justify the imposition of the estate tax." Resp. Br. at 18.

Addressing this argument, the Comptroller relies heavily on the principle that states may tax the intangible assets of their domiciliaries. *Greenough v. Tax Assessors of Newport*, 331 U.S. 486, 492-93 (1947). *See also Bonaparte v. State*, 63 Md. 465, 472

(1885) (holding "the domicile of a testator when living determines the situs of his personal property of an intangible nature, not permanently located elsewhere, for purpose of taxation[.]"). While this is true in the abstract, Mrs. Taylor neither owned nor controlled the assets Maryland seeks to tax. "'The federal QTIP election did not miraculously convert these QTIP assets so that they became the property of [Mrs]. Taylor.' 'They were merely "deemed" by the statute to be taxable as part of her federal estate.'" *Taylor*, 238 Md. App at 150. *See Mellinger*, 112 T.C. at 35 ("This property is 'treated as property passing from the' surviving spouse . . . and is taxed as part of the surviving spouse's estate at death, but QTIP property does not actually pass to or from the surviving spouse."). The statutory fictions that enable inclusion of the trust as part of Mrs. Taylor's federal estate within the limited scope of a federal tax provision cannot be used to circumvent the constitutional predicate of ownership.

Moreover, due to the structure of Maryland's estate tax scheme, the Majority's approach may produce arbitrary and unreasonable results that infringe due process. Since 1924 the federal government provided a dollar-for-dollar tax credit to offset payment of state estate or inheritance taxes. Dep't of Leg. Serv's, Fiscal and Policy Note, S.B. 646 (2018) at 3. Most states – including Maryland – directly linked their state-level estate tax to this federal credit.[7]  *Id.*  Thus, when the federal Economic Growth and Tax Relief

---

[7] During this period, Maryland's estate tax functioned as a "pick-up" tax, allowing the state to recover tax revenue that would ordinarily be paid to the federal government. *See Comptroller v. Phillips*, 384 Md. 583 (2005) ("[T]he Maryland estate tax is not an additional tax. Rather, it takes full advantage of federal revenue sharing by capturing the maximum amount of estate tax revenue that the federal government authorizes.");

- 10 -

Reconciliation Act (EGTRRA) of 2001 triggered a phase-out of the federal credit, most state estate taxes were implicitly repealed. *Id.* To avoid this result, the General Assembly decoupled the Maryland estate tax from its federal counterpart in the Budget Reconciliation and Financing Act (BRFA) of 2002. Dep't of Leg. Serv's, Fiscal and Policy Note, S.B. 2 (2004) at 2. Through this process, Maryland joined a minority of jurisdictions that retained their estate taxes, concurrently retaining the possibility of inconsistent estate filings.[8] For decedents living in these states, the Majority's interpretation of the QTIP scheme creates a serious risk of double or inconsistent taxation.

A simple twist on the facts of this case, briefly considered at the hearing of the Circuit Court, illustrates this result. Consider a scenario in which Mr. Taylor died in Maryland, and his Maryland estate made an identical inconsistent filing, claiming the QTIP deductible only on its federal tax return. In these circumstances, Maryland could impose its estate tax on the initial transfer of Mr. Taylor's assets, occurring in Maryland at the time of his death and the creation of the trust through his will. Nevertheless, the trust assets will still be "deemed" a part of Mrs. Taylor's federal estate under 26 U.S.C. §§ 2044(c) and 2056(b) for the purpose of recovering the federal estate tax deferred upon Mr. Taylor's death. Should this fictional transfer enable Maryland to impose its estate tax, the State would now be taxing the QTIP assets twice – once upon Mr. Taylor's death, and once upon

*Comptroller v. Jameson*, 332 Md. 723, 725 (1993) ("By providing for the full use of the federal credit for state death taxes, the Maryland estate tax statute shifts taxes that would otherwise be paid to the federal government to the state treasury").

[8] As of calendar year 2018, only twelve states maintain a state-level estate tax, five assess an inheritance tax, and Maryland uniquely imposes both. S.B. 646 at 4.

the death of his surviving spouse – even though Mrs. Taylor never actually owned or controlled those assets.

Alternatively, suppose Mr. Taylor was a Massachusetts resident at the time of his death and his estate made both a federal and state-level QTIP election. Like Maryland, Massachusetts enacted legislation following the 2001 EGTRRA that decoupled its estate tax from the federal credit to avoid phasing out its tax alongside the federal credit. *See* Mass. Gen. Laws ch. 65C, § 2A. In accordance with Massachusetts' QTIP scheme, Mr. Taylor's estate would be "treated as passing to the surviving spouse." Mass. Gen. Laws ch. 65C, § 3A(a). In theory, these assets would be constitutionally taxable by Massachusetts upon Mrs. Taylor's death to recover the benefit afforded by the initial deferral. However, should Mrs. Taylor relocate to Maryland before her death, the Majority's interpretation would also allow Maryland to impose its tax due to the federal deemed transfer.

Maryland, despite having never afforded any benefits or privileges to Mr. Taylor's estate in either of these scenarios, would receive a significant windfall based solely on the relocation of his surviving spouse. "Taxation is an intensely practical matter, and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences." *Farmers' Loan & Trust Co.* 280 U.S. at 212. It is the duty of this Court to avoid a construction of tax law that would produce such unreasonable results. *See Trinova Corp. v. Michigan Dept. of Treasury*, 498 U.S. 358, 386 (1991) (emphasizing the role of the judiciary "as a defense against state taxes which . . . give rise to serious concerns of double taxation, or attempt to capture tax revenues that,

under the theory of the tax, belong of right to other jurisdictions."); *Griffin v. Anne Arundel County*, 25 Md. App. 115, 127 (1975) (finding double taxation occurs when "'two taxes of the same character are imposed on the same property, for the same purpose, by the same taxing authority within the same jurisdiction during the same taxing period.'").

The Comptroller's contrary assertion that avoiding taxation of this trust will create a tax loophole and grant a windfall to the estate is without merit. As noted by the Circuit Court, no information on record suggests that Mr. Taylor's estate deferred the Michigan estate tax by making a QTIP election on a Michigan tax return in 1984. Moreover, Michigan's estate tax remains linked to the federal estate tax credit and is therefore implicitly abrogated by the 2001 EGTRRA. *See* M.C.L.A. § 205.232(1) ("A tax is imposed upon the transfer of the estate of every person who at the time of death was a resident of this state. The tax is equal to the maximum allowable federal credit under the internal revenue code for estate, inheritance, legacy, and succession taxes paid to the states."). Therefore, Mr. Taylor's estate is not receiving a tax break: Had Mrs. Taylor remained in Michigan at the time of her death in 2014, she would only be paying a federal tax on the transfer of her estate.

In summation, Mrs. Taylor neither owned the corpus of the QTIP, nor received derivative privileges from the government of Maryland. The Comptroller is now attempting to tax these assets absent any nexus between the trust and the state of Maryland. Lacking any exchange of benefits, Maryland is not authorized to impose its estate tax under the Fourteenth Amendment. A contrary result creates a significant risk of double or inconsistent taxation, incompatible with the requirements of due process and the essential

purpose of the QTIP taxation scheme.

For the foregoing reasons, I respectfully dissent.